**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**SHEILA JOHNSTON,**
**Individually, and on Behalf of**
**All Others Similarly Situated,**

**Plaintiff,**

**v.**

**Case No. 21-CV-00441-NJR**

**KASHI SALES, L.L.C.,**

**Defendant.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss Plaintiff Sheila Johnston's First Amended Class Action Complaint filed by Defendant Kashi Sales, L.L.C. ("Kashi"). (Doc. 20). For the reasons set forth below, Kashi's Motion to Dismiss is granted in part and denied in part.

### BACKGROUND

Johnston alleges that Kashi manufactures, labels, markets, and sells Soft Baked Breakfast Bars ("cereal bars") labeled as "Ripe Strawberry." (Doc. 16, p. 1). The cereal bars are packaged in a box. On the front of the box, Kashi has an image of the cereal bar with a red-colored filling down the center—and the words "Ripe Strawberry, 3g Fiber,*" "Made with Wildflower Honey," and "10g Whole Grains," and a seal representing "Non-GMO Project Verified." (*Id.* at pp. 1-2). A picture of the front of Kashi's box is below:



On the back of the box, there is a photograph of two strawberries along with oats and text, including:

- These bars were made for you with love;

- Love for simple ingredients, like strawberries and whole grains; and

- Delightfully Nutritious

(*Id*. at p. 2). A picture of the back of Kashi's box is below:



Ingredients are also listed on the box. (*Id.* at p. 7). The strawberry filling is made from pear juice concentrate, tapioca syrup, cane sugar, apple powder, strawberry puree concentrate, cornstarch, glycerin, natural flavors, and elderberry juice concentrate for color. (*Id.*). Johnston thus alleges that "[t]he most predominant ingredient is pear juice concentrate, followed by tapioca syrup, cane sugar, apple powder, and finally, strawberry puree concentrate." (*Id.* at p. 8).

Johnston purchased the Ripe Strawberry cereal bars on one or more occasions at Kroger in Mt. Vernon, Illinois. (*Id.* at p. 17). Johnston purchased the cereal bars "because she expected it would have more of the named fruit ingredient." (*Id.*). "[She] wanted more than a 'strawberry taste,' but a non-de minimis and non-negligible amount of the strawberry ingredients, to provide the benefits of strawberries described here." (*Id.*). Johnston alleges that she expected the filling would contain more strawberry ingredients than other fruit ingredients, but did not expect that the "filling would contain more pears and apples compared to strawberries." (*Id.*). Besides strawberries, Johnston "expected honey would be the [ ] primary sweetener but at a minimum, that it would contain a non-negligible amount of honey." (*Id.*). Johnston "prefers honey to sugar." (*Id.*). Thus, Johnston alleges she "would not have purchased the [cereal] [bars] if she knew the representations were false and misleading." (*Id.*).

Johnston brings a class action against Kashi with the following claims: (1) Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA"); (2) Violations of State Consumer Fraud Acts; (3) Breaches of Express Warranty, Implied Warranty of Merchantability, and Magnuson Moss Warrant Act, 15 U.S.C. § 2301

("MMWA"); (4) Negligent Misrepresentation; (5) Fraud; and (6) Unjust Enrichment. (Doc. 16). Kashi timely moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 12).

The Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d). Under CAFA, federal courts have jurisdiction over cases in which (1) the class consists of 100 or more members, *see* 28 U.S.C. § 1332(d)(5)(B); (2) any plaintiff is a citizen of a state different from that of any defendant, 28 U.S.C. § 1332(d)(2)(A); and (3) the aggregate amount of the plaintiffs' claims exceeds $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(6). Here, Johnston alleges diversity exists because she is a citizen of Illinois and "Kashi Sales, L.L.C. is [a] Delaware limited liability company with a principal place of business in Battle Creek, Calhoun County, Michigan and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff." (Doc. 16, p. 16). Kashi's corporate disclosure statement confirmed that "Kashi Sales, L.L.C. is a single-member limited liability company organized under the laws of Delaware with its principal place of business in Michigan." (Doc. 29). Kashi also noted that "[i]ts sole member is Kellogg Sales Company, which is a Delaware corporation with its principal place of business in Michigan." (*Id.*). Johnston defines the class as all persons in the States of Illinois, Iowa, Ohio, Arkansas, and Texas "who purchased the Product during the statutes of limitations for each cause of action alleged." (Doc. 16, p. 18). Thus, it is reasonable to infer that this class includes more than 100 people. *See Tropp v. Prairie Farms Dairy, Inc.*, 2021 WL 5416639, at *1 (W.D. Wis. Nov. 19, 2021) ("[plaintiff] seeks to represent a class of

consumers in Wisconsin, Illinois, Iowa, and Michigan who purchased the product at issue, so it is reasonable to infer that that the proposed class includes at least 100 members"). Johnston does not explain how the "aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs." (Doc. 16, p. 16). Nonetheless, Kashi has not challenged that there is at least $5,000,000 in controversy. Thus, for purposes of this Motion, the Court concludes Johnston has properly alleged subject matter jurisdiction. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) ("Normally, a plaintiff can meet [the] pleading requirement by simply alleging a plausible amount in controversy.").[1]

---

[1] On the other hand, the Court does not have federal question jurisdiction simply because Johnston brings a claim under the MMWA. To be clear, federal courts do not have federal question jurisdiction over breach-of-warranty actions under the Act:

> (A) if the amount in controversy of any individual claim is less than the sum or value of $25;
>
> (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; <u>or</u>
>
> (C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

*Id.* at 731 (emphasis added) (citing 15 U.S.C. § 2310(d)(3)). Here, Johnston alleges that the cereal bars "[are] sold for a price premium compared to other similar products, no less than $4.59 for six 1.2 OZ (35g) bars, a higher price than it would otherwise be sold for, absent the misleading representations and omissions." (Doc. 16, p. 16). Her damages are certainly less than $50,000. *See Ware*, 6 F.4th at 731 (noting that the "[plaintiffs'] damages are certainly less than $50,000 . . . [because] they paid only about $5,000 for the television and accessories, and the value of a replacement television with four-year-old technology would have been quite a bit less than they initially spent"). Further, Johnston has not named any plaintiffs besides herself. Thus, the Court lacks federal question jurisdiction based only on Johnston's MMWA claim.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion is to decide the adequacy of the claims, not to determine the merits of the case or decide who will ultimately prevail. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, a party only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A party need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* For purposes of a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts as true and draw all possible inferences in favor of the nonmovant. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

## ANALYSIS

### I.      Standing to Pursue Injunctive Relief

There is a "split of authority on the question of whether consumer plaintiffs claiming [only that] they were deceived can pursue injunctive relief when they are aware of the deceptive practice at issue." *See In re Herbal Supplements Mktg. and Sales Practices Litig.*, 2017 WL 2215025, at *7 (N.D. Ill. 2017) (collecting cases). Here, the split favors Kashi. Johnston cites *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F. Supp. 3d 670, 673 (N.D. Ill. 2016), for the notion that "even where a plaintiff is *unlikely* to purchase a product again, he or she can maintain standing for injunctive relief." (Doc. 21, p. 24). But the court in *Leiner* relied on cases from the Eastern District of New York, Central District of California, and Northern District of California—non-binding authority.

District courts within the Seventh Circuit have concluded that allegations of deceptive practices do not support standing for injunctive relief. For instance, in *In re Herbal*, 2017 WL 2215025, at *8, the court noted:

> Moreover, beyond the persuasive force of *Bohn* and similar cases, the Seventh Circuit appears to endorse Defendants' argument. In *Camasta v. Jos. A Bank Clothiers*, the plaintiff brought a consumer fraud action based on the defendant's allegedly fraudulent sales technique. 761 F.3d 732, 734–35 (7th Cir. 2014). He claimed that had he known the truth, he would not have purchased the defendant's products. *Id*. at 735. The court explained that the plaintiff's claim did not entitle him to injunctive relief because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id*. at 740–41 (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)). *Camasta* uses the language of Article III standing (i.e., "case or controversy"), cites *O'Shea* (an Article III standing case), and "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits," *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998)). Thus, *Camasta* dealt with Article III standing. Even if *Camasta* were dicta, as the court found in *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), it is persuasive.

Additionally, in *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017), the court acknowledged:

> The Seventh Circuit seems likely to agree, based on its reasoning in a similar context that a plaintiff who was already aware of the defendant's deceptive sales practices could not obtain injunctive relief because he "is not likely to be harmed in the future." *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014) ("'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'") (quoting *O'Shea*, 414 U.S. at 495, 94 S.Ct. 669). Although plaintiff cites a decision that has dismissed this portion of *Camasta* as *dicta*, *see Le v. Kohls Dep't Stores, Inc.*, 160 F.Supp.3d 1096, 1111 (E.D. Wis. 2016), the Court finds the Seventh Circuit's reasoning compelling, regardless of whether it is *dicta*. *See in re Herbal Supplements*, 2017 WL 2215025, at *8 ("Even if *Camasta* were *dicta*, as the court found in [*Le*], it is persuasive.").

In *Geske v. PNY Techs., Inc.*, 503 F.Supp.3d 687, 702 (N.D. Ill. 2020), the court continued this trend finding that:

> Although the Seventh Circuit hasn't directly addressed standing for injunctive relief in this context, it has offered instructive dicta. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). There, the Court of Appeals stated that, once a plaintiff 'sale aware of a defendant's "sale practices, he is not likely to be harmed by the practices in the future." *Id.* at 741. Courts in this district have picked up that line of reasoning and concluded that allegations of deceptive practices, without more, do not support standing for injunctive relief.

Based on *Camasta*, Johnston, who is already aware of the Kashi's allegedly deceptive sales practices, lacks standing to obtain injunctive relief.

## II.    Preemption

Kashi also points out that "[Johnston] alleges that the labeling violates two FDA food labeling regulations—21 C.F.R. § 101.18(b) and 21 C.F.R. § 102.5(b), which allegedly govern the naming of food products." (Doc. 20-1, p. 19). Kashi explains that "[Johnston] alleges that Kashi's use of the phrase 'Ripe Strawberry' violates 21 C.F.R. § 101.18(b), as that phrase 'includes strawberries but does not include pears or apples, even though pears and apples are stated in the fine print on the ingredient list.'" (*Id.*). Kashi also notes that "[Johnston] claims that the term 'Ripe Strawberry Soft-Baked Breakfast Bars' violates 21 C.F.R. § 102.5(b) because it 'fails to include the percentage of the characterizing strawberry ingredients' and 'creates an erroneous impression that it contains more strawberries than it does.'" (*Id.* at p. 20). According to Kashi, "even if [Johnston] had alleged a violation of any FDA regulation (which she has not), [Johnston's] effort to hold Kashi liable for violating FDA regulations fails because the FDCA does not permit private

plaintiffs to enforce violations of FDA regulations." (*Id*. at p. 21).

Johnston responds arguing that "[t]here is nothing preventing [Kashi] from describing the [cereal] [bars] as a 'Mixed Fruit Soft-Baked Breakfast Bar.'" (Doc. 21, p. 13). According to Johnston, "[f]or preemption to be a viable defense, it must touch on something a party is required to do, i.e., the contents of the Nutrition Facts." (*Id*.).

Significantly, Kashi cites *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019), and includes the following parenthetical: "affirming dismissal of ICFA claim and noting that '[t]he FDCA does not create a private right of action.'" (Doc. 20-1, p. 21). Kashi's parenthetical of *Benson*, however, is confusing. In the first paragraph of *Benson*, the Seventh Circuit noted:

> The plaintiffs contend that [defendant's] boxes of chocolate contain needless empty space, and that this practice misleads consumers. After allowing [plaintiffs] to amend their complaint, the district court granted [defendant's] motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint with prejudice. The court found that the plaintiffs had not adequately pleaded a violation of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301–399, and that the FDCA preempted their state-law claims. *We affirm the judgment, though on other grounds.*

*Id*. at 644 (emphasis added). The Court did not affirm the dismissal of the ICFA claim because "[t]he FDCA does not create a private right of action." *Id*. at 645. To be clear, the Court noted:

> Preemption, however, is "an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). "Affirmative defenses do not justify dismissal under Rule 12(b)(6)." *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). Moving for judgment on the pleadings under Rule 12(c) is the more appropriate way to address an affirmative defense. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). This is not one of those cases in which the plaintiff has pleaded herself out of court, and so the difference

between Rules 12(b)(6) and 12(c) cannot be disregarded. *See, e.g., Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009). The district court thus erred by penalizing [plaintiff] for failing to anticipate an affirmative defense in her complaint and dismissing the action based on FDCA preemption.

*Id.* (emphasis added).

Not only is preemption an affirmative defense, but just last month, the Seventh Circuit acknowledged that "[i]t follows from this structure and from the plain language of Rule 8(c)(1) that an affirmative defense must be raised in the answer, not by motion." *Luna Vanegas v. Signet Builders, Inc.*, 2022 WL 3572769, at *2 (7th Cir. Aug. 19, 2022) (citing *Vasquez v. Indiana Univ. Health, Inc.*, 40 F.4th 582, 588 (7th Cir. 2022)); *see also Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 2022 WL 3355075, at *8 (7th Cir. Aug. 15, 2022) (noting that "whether the salary increase was reasonable is an affirmative defense, which cannot defeat a claim at the motion to dismiss stage").

Dismissals based on affirmative defenses may be appropriate when the pleadings and matters subject to judicial notice clearly prove that a plaintiff's claim is barred as a matter of law. The Seventh Circuit has acknowledged:

With a narrow and pragmatic exception for a plaintiff who has pleaded herself out of court, the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c), not a Rule 12(b)(6) motion. *Benson*, 944 F.3d at 645; *see also Burton v. Ghosh*, 961 F.3d 960, 964–65 (7th Cir. 2020) (collecting cases); *cf. Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (example of pragmatic exception where complaint unambiguously set forth dates establishing statute-of-limitations defense). "Observing the distinction is necessary to allocate correctly the burdens of pleading and proof," *H.A.L. N.Y. Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020), and serves an important notice function. *Burton*, 961 F.3d at 965, citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), among others.

*Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806–07 (7th Cir. 2020). Besides a statute of limitations defense, the Seventh Circuit has acknowledged that sometimes courts can properly dismiss based on a claim-preclusion defense. *Luna Vanegas*, 2022 WL 3572769 at *2. "But it is safer to insist on compliance with the rules." *Id.* Here, Johnston has not pleaded herself out of court.

Notably, a year after *Benson*, 944 F.3d 639, the Court in *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 483 (7th Cir. 2020), resolved defendants' preemption defense at the motion to dismiss stage, but clarified that it was to "head off another round of appeals in the multidistrict litigation." The Court in *Bell* did not overrule *Benson*—and accordingly, the Court will not dismiss Johnston's claims based on Kashi's preemption defense.

## III.   Count I – ICFA Claim[2]

To state a claim under ICFA, a plaintiff must plead (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred in the course of conduct involving the trade or commerce; and (4) defendant's deceptive or unfair practice proximately caused plaintiff actual damage. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

"Courts apply a 'reasonable consumer' standard in evaluating the likelihood of

---

[2] Kashi appears to be moving to dismiss Johnston's other claims based on alleged violations of state consumer fraud acts in an undeveloped footnote. The Court denies Kashi's motion to dismiss to the extent it is seeking to dismiss the other claims alleging violations of state consumer fraud acts for the reasons that follow, and because the argument is undeveloped. *See Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 848 F.3d 822, 829 (7th Cir. 2017) ("A party may waive an argument by presenting it only in an undeveloped footnote.").

deception." *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) (citing

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015)). This standard requires a

"practical and fact-intensive approach to consumer behavior." *Bell*, 982 F.3d at 478.

     In *Bell*, the plaintiffs alleged that the phrase "100% Grated Parmesan Cheese" on

the defendants' front labels was deceptive because the products contained other

ingredients besides cheese. *Id*. at 473. The district court dismissed plaintiffs' claims on

two grounds:

> First, the court found that the prominent '100%' claims on the front labels
> are ambiguous and that a consumer who seeks clarity can find it by reading
> the ingredient list on the back label. Second, the court found that common
> sense would tell a reasonable consumer that, despite the 100% claims, these
> cheese products must contain added ingredients because they are sold
> unrefrigerated in the main grocery aisles, alongside dried pastas and
> canned sauces.

*Id*. at 475.

     On appeal, the Seventh Circuit acknowledged that "plaintiffs' claims survive if

they have plausibly alleged that the defendants' front labels likely lead a significant

portion of reasonable consumers to falsely believe something that the back labels belie."

*Id*. at 476. According to the Court, the phrase "100% Grated Parmesan Cheese" was

ambiguous because it could convey to a reasonable consumer any of three messages:

"whatever it contains is '100% grated,' or perhaps that whatever cheese it contains is

'100% Parmesan' [,] [or] [perhaps] [that] '100%' applies to all three words: it's all cheese;

all the cheese is Parmesan, and it's all grated." *Id*. at 476–77. The Court then held that "an

accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an

ambiguous front label deceives reasonable consumers." *Id*. at 476. Accordingly, the Court

found that "[h]ow reasonable consumers actually understand defendants' '100% Grated Parmesan Cheese' labels is a question of fact that cannot be resolved on the pleadings." *Id.* at 483.

*Bell* is not only an example of a deceptive advertising claim that survives dismissal, but it also provides examples when deceptive advertising claims are based on such "unreasonable or fanciful interpretations of labels or other advertising, [that] dismissal on the pleadings may well be justified." *Id.* at 477. These examples include:

> *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) ("It is implausible that a reasonable consumer would interpret 'Original Sundae Cone,' 'Original Vanilla,' and 'Classic,' to imply that Drumstick is more wholesome or nutritious than competing products."); *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) ("Made with Real Vegetables" label on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables"); *Werbel*, 2010 WL 2673860, at *3 (colorful "crunch berries" on Cap'n Crunch box did not reasonably promise fresh fruit); *McKinnis*, 2007 WL 4766060, at *4 (same for Froot Loops).

*Id.* at 477–78.

A. *Representations Regarding Strawberries in Kashi's Cereal Bars*

Kashi argues courts have "dismiss[ed] other lawsuits in which consumers, like [Johnston] here, misinterpreted true statements about a product's flavor as representations about its ingredients." (Doc. 20-1, p. 12). Kashi explains that these courts found the labeling would not mislead a reasonable consumer because consumers would not make assumptions about the products' ingredients based on the representation of their flavor. Kashi's cases—*Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020), and *Wallace v. Wise Foods, Inc.*, 2021 WL 3163599, (S.D.N.Y. July 26, 2021)—

are not only non-binding, but these courts were not bound by *Bell*, 982 F.3d 468.

Kashi also notes that Johnston's interpretation "defies common sense, which the Supreme Court has instructed courts to apply in weeding out implausible claims." (Doc. 20-1, p. 14). To be clear, "'[c]ommon sense' does not render plaintiffs' reading unreasonable." *Bell*, 982 F.3d at 482. "That reasoning stray[s] from the standard for dismissal for failure to state a claim under Rule 12(b)(6)." *Id*.

Notably, district courts within the circuit have denied motions to dismiss in deceptive advertising cases finding that the labels' phrases are subject to different plausible interpretations. *See e.g.*, *Kinman v. Kroger Co.*, 2022 WL 1720589, at *6 (N.D. Ill. May 27, 2022) (finding that a plaintiff's understanding that "smoked gouda" meant that the cheese was smoked over hardwood was "not an inherently fanciful or unreasonable interpretation, because the word 'smoked' has at least two meanings, one of which is the meaning plaintiff gave it . . . [and] [the] [other] [is] an adjective that describes a flavor"); *Rudy v. Fam. Dollar Stores, Inc.*, 2022 WL 345081, at *4 (N.D. Ill. Feb. 4, 2022) (noting that "the term 'smoked' may be used to describe a flavor, as Family Dollar suggests, it can also be used to describe a process"); *Harris v. Kashi Sales, LLC*, 2022 WL 2390933, at *3 (N.D. Ill. July 1, 2022) (denying defendant's motion to dismiss and noting that "'mixed berry' is misleading because it is unclear whether it's a flavor or ingredient"); *Elder v. Bimbo Bakeries USA, Inc.*, 2022 WL 816631, at *2 (S.D. Ill. Mar. 17, 2022) ("[t]he phrase 'All Butter' is subject to different plausible interpretations and is therefore ambiguous").

Like the deceptive advertising cases that survive dismissal—where the words in defendants' labels were subject to different plausible interpretations—the phrase "Ripe

Strawberry" is subject to different plausible interpretations. It is unclear whether Kashi is describing "Ripe Strawberry" as a flavor, smell, ingredient, or a process (i.e., selecting only fruit that is ripe).

Besides the different plausible interpretations of "Ripe Strawberry," Johnston's interpretation is not nearly as fanciful as the examples provided in *Bell*, 982 F.3d 968. In one example, *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860 (N.D. Cal. July 2, 2010), the plaintiff was suing under California's Unfair Competition Law ("UCL") alleging that "members of the public are likely to be deceived into believing that Cap'n Crunch derives nutrition from actual fruit by virtue of the reference to 'Berries' and because the Crunch Berries allegedly are 'shaped to resemble berries.'" *Id*. at *3. The court pointed out that the term "Berries" is preceded by the word "Crunch," to form the phrase, "Crunch Berries." *Id*. The court continued noting that "[t]he image of the Crunch Berries, which is 'ENLARGED TO SHOW TEXTURE,' shows four cereal balls with a rough, textured surface in hues of deep purple, teal, chartreuse green and bright red." *Id*. According to the court, "[t]hese cereal balls do not even remotely resemble any naturally occurring fruit of any kind." *Id*. Further, there were "no representations that the Crunch Berries [were] derived from real fruit nor are there any depictions of any fruit on the cereal box." *Id*. The court then compared the features of the Cap'n Crunch packaging to the features of the fruit juice snacks packaging in *Williams v. Gerber Prod. Co.*, 552 F.3d 934 (9th Cir. 2008),[3] noting the following:

---

[3] In *Williams*, the Ninth Circuit reversed the district court's dismissal of the action noting that "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to

None of the attributes which the *Williams* court found compelling is present in this case. Unlike the packaging for Gerber's Fruit Juice Snacks, there are no pictures or images of any berries or any other fruit depicted on the Cap'n Crunch cereal box. Nor are there any representations that the cereal is made with real fruit or is nutritious. Rather, the Crunch Berries—which are not fruit—are described as a "SWEETENED CORN & OAT CEREAL" and shown as brightly-colored balls of cereal that no reasonable consumer would believe are made from real berries. In sharp contrast to the Fruit Juice Snacks at issue in *Williams*, there simply is nothing in the Cap'n Crunch packaging that would lead a reasonable consumer to believe that the brightly-colored cereal balls depicted on the product cover and described as Crunch Berries are, in fact, made or derived from real berries or fruit.

*Werbel ex rel.*, 2010 WL 2673860, at *4.

Unlike the Cap'n Crunch cereal box in *Werbel*, Kashi included pictures of strawberries on its box. The back of Kashi's box also represents that the cereal bars are made from strawberries and are nutritious. Again, the text includes the following:

- These bars were made for you with love;

- Love for simple ingredients, like strawberries and whole grains; and

- Delightfully Nutritious

(Doc. 16, p. 2). Further, unlike the Cap'n Crunch packaging where the defendant showed brightly-colored balls including—deep purple, teal, chartreuse green and bright red balls—Kashi's packaging shows the cereal bar's red filling to resemble strawberry filling—and allegedly uses ingredients to make the filling look red.

Because "Ripe Strawberry" is subject to different plausible interpretations and Kashi's packaging further contributes to Johnston's reasonable interpretation—Kashi's Motion to Dismiss is denied as to Johnston's ICFA claim premised on strawberries in

---

dismiss is appropriate." *Id*. at 939.

Kashi's cereal bars. *See Bell*, 982 F.3d at 483 ("[h]ow reasonable consumers actually understand defendants' '100% Grated Parmesan Cheese' labels is a question of fact that cannot be resolved on the pleadings").

B. *Representations Regarding Honey in Kashi's Cereal Bars*

Johnston alleges that Kashi's representation regarding honey is misleading because the packaging contains the phrase "Made with Wildflower Honey" and she expected that "honey would be the Product's primary sweetener but at a minimum, that it would contain a non-negligible amount of honey." (Doc. 16). This interpretation of Kashi's label is fanciful.

In *Bell*, 982 F.3d 468, the Seventh Circuit provided *Red*, 2012 WL 5504011, as an example where deceptive advertising claims are based on such "unreasonable or fanciful interpretations of labels or other advertising, [that] dismissal on the pleadings may well be justified." *Id*. at 477. In *Red*, the plaintiff was suing under the UCL because the defendant's label on a box of crackers said "Made with Real Vegetables." "Plaintiff's theory of the case [was] that the packaging 'suggests the product is *healthy* and contains a *significant amount* of vegetables' (SAC ¶ 98, emphasis added), because the packaging boasts that the crackers are made with real vegetables and depicts vegetables." *Id*. at *3. The court then found that "it strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of crackers is healthful or contains huge amounts of vegetables simply because there are pictures of vegetables and the true phrase 'Made with Real Vegetables' on the box." *Id*. at *4. As a result, the court found it "suitable for dismissal as no factfinder could find that the challenged packaging is likely to deceive a

reasonable consumer." *Id.*

Similar to the plaintiff's theory in *Red*, Johnston is alleging that Kashi's packaging suggests that the cereal bars are more nutritious and contain honey as the primary sweetening ingredient because it says, "Made with Wildflower Honey." (Doc. 16). But similar to how it was unreasonable for the plaintiff in *Red* to be deceived into thinking a box of crackers contains huge amounts of vegetables—it is fanciful that reasonable consumers will be deceived into thinking that the primary sweetening ingredient in *fruit-filled* cereal bars is honey—not fruit.

Because Johnston's interpretation of Kashi's label is fanciful, Johnston's ICFA claim regarding the amount of honey in Kashi's cereal bars must be dismissed.

## IV.   Count III – Breach of Warranty Claims

### A. *Privity*

Kashi argues that Johnston's "breach of warranty claims [ ] fail for lack of privity." (Doc. 20-1, p. 22). According to Kashi, "[b]ecause [Johnston] alleges that she purchased the Product at 'stores' such as Kroger (FAC ¶ 102), she cannot establish privity with Kashi, and this Court must dismiss her breach of warranty claims." (*Id.*). Johnston responds that the privity inquiry is fact-intensive and inappropriate at the motion to dismiss stage. Johnston also argues that she satisfies the "direct relationship" exception to strict privity because her allegations show that Kashi was "aware that a greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what 'people don't get enough of at meals.'" (Doc. 21, p. 19).

It is appropriate to address the privity inquiry at the motion to dismiss stage. In the very case on which Johnston relies in support of the "direct relationship" exception— *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772 (N.D. Ill. 2016)—the court was deciding a motion to dismiss. The court acknowledged that "[w]hile discovery may yield additional supporting evidence upon which Plaintiffs can rely, Plaintiffs are also required to plead a sufficient basis in the Complaint to state a claim for privity." *Id*. at 807. Further, the privity inquiry was addressed at the motion to dismiss stage in *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003). *See id*. at 525 ("because it is undisputed that [plaintiff] lacks privity of contract with [defendant], this claim against [defendant] was properly dismissed").

Johnston has not pled a sufficient basis to state a claim for privity. Johnston merely refers to one sentence: "Defendant is aware that greater percentage of consumers are eating more snacks and has emphasized the importance of fruit ingredients to make up for what 'people don't get enough of at meals.'" (Doc. 16, p. 3). This is not the same amount of factual support as *In re Rust-Oleum Restore Mktg.*, 155 F. Supp. 3d 772, where the court noted:

> Plaintiffs have done so here, where they allege factual support for the "direct dealing" exception. Namely, Plaintiffs allege a series of well-pleaded paragraphs detailing Rust-Oleum's *direct marketing campaign to consumers*, including to Plaintiffs and the putative class (*see, e.g.*, R.16, ¶¶ 59-70), and additionally allege that "consumers relied upon Defendant[']s misrepresentations ... regarding Restore, including advertisements that Restore would last ten to twelve years" (*id.*, ¶ 93; *see also id.*, ¶¶ 329, 345, 350). In addition, Plaintiffs allege factual support of specific instances, for example with Plaintiff Hoff, alleging that "Hoff reviewed Defendant's advertising regarding Restore's high quality and longevity, and in reasonable reliance of those statements, incurred out of pocket costs for

> damages caused by Restore's premature failure and/or the concomitant
> costs of repair and/or replacement of his deck." (*Id.*, ¶ 337).

*Id.* at 807 (emphasis added). Besides the lack of factual support for the "direct dealing" exception, Johnston alleges that its allegation is based on Kashi's "internal document" whereas the plaintiff alleged that Rust-Oleum had a direct marketing campaign to consumers. Because Johnston was not in privity with Kashi, Kashi's Motion to Dismiss is granted as to Johnston's warranty claims.

### B. Pre-suit Notice

Even if Johnston sufficiently alleged privity, Johnston's claims premised on breaches of warranty fail for lack of pre-suit notice. Kashi correctly points out that "Illinois law requires that 'a buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.'" (Doc. 20-1, p. 22) (citing 810 ILCS 5/2-607(3)(a)).

Johnston argues that notice is not required because Kashi knew its cereal bars' composition and conceded the point on its motion to dismiss. The problem is a "seller must know more than just the facts constituting the breach; the seller must know of the buyer's claims that those facts constitute a breach." *Elder*, 2022 WL 816631, at *4 (citing *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996) (noting that "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer")). Thus, Kashi's knowledge of its own ingredients does not constitute actual knowledge of the defect.

Johnston also argues that the filing of the complaint satisfies the notice requirement. The Illinois Supreme Court has found, however, that "[o]nly a consumer plaintiff who suffers a personal injury may satisfy the section 2–607 notice requirement by filing a complaint stating a breach of warranty action against the seller." *Connick*, 675 N.E.2d at 590. Johnston claims only economic loss—so filing a complaint does not satisfy the notice requirement.

### C.  *Johnston's MMWA Claim*

First, Johnston's MMWA claim must be dismissed for lack of jurisdiction. As noted above, Johnston has not named any plaintiffs besides herself. In *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020), the plaintiffs named three individuals, but argued that "by satisfying CAFA requirements, they are relieved of the MMWA's obligation to name at least one hundred plaintiffs." The Ninth Circuit disagreed, pointing out that "[t]he MMWA's federal-claim requirements of one hundred named plaintiffs for a class action and an amount in controversy of $25 individually and $50,000 in the aggregate stand in marked contrast to CAFA's jurisdictional requirements for *diversity actions*: an amount in controversy exceeding $5,000,000 exclusive of interest and costs, numerosity (at least one hundred plaintiffs who need not all be named), and minimal diversity." *Id.* (citing 28 U.S.C § 1332(d); Fed. R. Civ. P. 23; cf. 28 U.S.C. § 1332(a)). The Court then noted:

> Construing CAFA to provide jurisdiction over MMWA claims despite Plaintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMWA. But the legislature's intent to repeal a statute must be "clear and manifest." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 662, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) (citation omitted). Although CAFA was enacted thirty years after MMWA, *see* Magnuson-Moss Warranty Act,

> Pub. L. No. 93-637, 88 Stat. 2183 (1975) and Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), CAFA does not demonstrate any intent by Congress to repeal or alter parts of the MMWA's jurisdictional requirements.

*Id.* at 1035. "Therefore, CAFA may not be used to evade or override the MMWA's specific numerosity requirement, and we affirm the district court's dismissal of the MMWA claim." *Id.*[4]

Even if the Court has jurisdiction over the MMWA claim, "[t]he ability to sustain a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim." *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016); *see also In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. 305, 315 (S.D. Ill. 2007) (noting that "[a]lthough [p]laintiffs bring this action pursuant not to state law but the Magnuson–Moss Act, state law nonetheless dominates this case due to the peculiar nature of the federal statute, which in numerous respects is essentially a vehicle for vindicating state-law warranty claims in federal court").[5] Because the state-law warranty claims fail, Johnston's MMWA claim fails.

---

[4] The Seventh Circuit has not decided this issue. In fact, in *Ware*, 6 F.4th at 733, the Seventh Circuit recognized the "split in authority about the interaction between the class requirements under CAFA and the Magnuson-Moss Warranty Act." The Court acknowledged that "[t]he Ninth Circuit recently held that even if a putative Magnuson-Moss class action satisfies CAFA's criteria (i.e., minimal diversity of citizenship and the amount in controversy exceeds $5 million), it must still independently meet Magnuson-Moss's named-plaintiff requirement." *Id.* (citing *Floyd*, 966 F.3d at 1034–35). The Court then noted that "[w]e need not take sides on this issue here because it does not affect the outcome." *Id.*

[5] Notably, the "Magnuson–Moss Act does contain substantive provisions in addition to the remedies it furnishes for prosecuting state-law breach of warranty claims in federal court." *In re Gen. Motors Corp. Dex-Cool Prod. Liab. Litig.*, 241 F.R.D. at 315. But Johnston fails to allege any violation of the substantive provisions. Rather, Johnston alleges breaches of express and implied warranties which are controlled by state law.

Finally, even if the Court has jurisdiction and the state-law warranty claims survive, the MMWA claim must be dismissed because the phrases "Ripe Strawberry" and "Made with Wildflower Honey" are descriptions of Kashi's cereal bars. These descriptions do not warrant that the cereal bars are "defect free or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A); *see e.g.*, *Elder*, 2022 WL 816631, at *4 (dismissing the plaintiff's MMWA claim because "[t]he description 'All Butter Loaf Cake' makes no claim that the cake is free of defects or will meet a specified level of performance over a specified period of time"); *Rudy*, 2022 WL 345081, at *8 (dismissing the plaintiff's MMWA claim because "[t]he phrase 'Smoked Almonds' is a product description that does not warrant to consumers that the Product is defect-free or will perform at a specified level over a specific time").

## V.      Count IV – Negligent Misrepresentation Claim

According to Kashi, Johnston "can only recover in contract—not tort." (Doc. 20-1, p. 23). Kashi relies on the economic loss doctrine—also known as the "*Moorman* doctrine." "The *Moorman* doctrine is intended to preserve the distinction between tort and contract." *Sienna Ct. Condo. Ass'n v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 1119 (Ill. 2018). The Illinois Supreme Court has explained that the doctrine "denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Id.* (quoting *Collins v. Reynard*, 607 N.E.2d 1185, 1188 (Ill. 1992) (Miller, J., specially concurring, joined by Bilandic, Freeman, and Cunningham, JJ.)). Because Johnston seeks relief for disappointed commercial expectations—her negligent misrepresentation claim is barred by the *Moorman* doctrine.

Johnston responds that her negligent misrepresentation claim is not barred because she meets one of the exceptions to the *Moorman* doctrine: "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 452 (Ill. 1982).[6] The problem is this exception applies only when the entity is in the *business of supplying information*. In fact, in *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006), the Illinois Supreme Court noted:

> Subsequently, *in Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill.2d 160, 168, 223 Ill.Dec. 424, 679 N.E.2d 1197 (1997), we addressed the negligent misrepresentation exception to the *Moorman* doctrine directly, explaining that the focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible.

Here, Kashi is not in the business of supplying information, but is in the business of providing something tangible—cereal bars. Accordingly, an exception to the *Moorman* doctrine does not apply, and Kashi's Motion to Dismiss is granted as to Johnston's negligent misrepresentation claim.

## VI.   Count V – Fraud Claim

In Illinois, a claim for fraud must include the following elements: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the

---

[6] The "intentional misconduct" exception does not apply to negligent misrepresentation claims "because by definition fraud is intentional and negligence is not." *Willard v. Tropicana Mfg. Co., Inc.*, 577 F. Supp. 3d 814, 837 (N.D. Ill. 2021) (citing *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 722 (N.D. Ill. 2020)).

statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 675 N.E.2d at 591).

Johnston's fraud claim fails from the start because her allegations are insufficient to support scienter. Johnston merely alleges that Kashi's "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations." (Doc. 16, p. 21). The Court need not accept this conclusory allegation. Accordingly, Johnston's fraud claim must be dismissed.

**VII.   Count VI — Unjust Enrichment**

"Under Illinois law, unjust enrichment is not a separate cause of action." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011). "Instead, Illinois courts describe it as 'a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence . . . .'" *Benson*, 944 F.3d at 648 (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Ins. Co.*, 484 N.E.2d 349, 354 (Ill. App. Ct. 1985)). "The request for relief based on unjust enrichment is therefore 'tied to the fate of the [ICFA] claim[.]'" *Id.* (quoting *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019)).

Because Johnston's ICFA claim as to the amount of strawberries in Kashi's cereal bars survives — Johnston's unjust enrichment claim must survive. *See e.g., Laff v. Best Buy Stores, L.P.*, 2010 WL 2220581 (N.D. Ill. June 3, 2010) ("The Court finds that plaintiff has sufficiently alleged the elements of his ICFA claim, as well as that [defendant] received an unjust benefit from its denial of plaintiff's price match request on the Samsung television."); *Clay Fin. LLC v. Mandell*, 2017 WL 3581142, at *8 (N.D. Ill. Aug. 18, 2017)

("Plaintiffs sufficiently alleged that Field obtained Plaintiffs' funds from Mandell Companies through wrongful conduct and therefore the Motion to Dismiss the unjust enrichment claim is denied."); *Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, at *4 (N.D. Ill. Dec. 7, 2017) ("[Defendant] argues that the fraud and unjust enrichment claims fail for the same reasons as the ICFA claim. Since the ICFA claim remains, the fraud and unjust enrichment claims remain as well.").

## CONCLUSION

For these reasons, the Motion to Dismiss filed by Kashi (Doc. 20) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** as to Johnston's breach of warranty, negligent misrepresentation, common-law fraud claims, injunctive relief, and all claims based on Kashi's representations regarding honey. The motion is **DENIED** as to Johnston's consumer fraud and unjust enrichment claims. The action will proceed on Johnston's claims in Counts I, II, and VI.

**IT IS SO ORDERED.**

**DATED:  September 8, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**